O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT GARBER, | ) | Case No. CV 11-09745 DDP (RNBx) |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) | |
| HICKMAN #30355, in her official capacity as a detective for the Los Angeles Police Department, | ) | [Dkt. Nos. 33 & 37 ] |
| Defendant. | ) | |

Presently before the court are Plaintiff Robert Garber's Motion for Summary Judgment and Defendants City of Los Angeles, Los Angeles Police Department, Jennifer Hickman, Jill Niles, and Frances Boateng's Motion for Summary Judgment. Having considered the parties' submissions, the court adopts the following order.

**I. Background**

The following facts are not disputed.[1]

---

[1] These facts are drawn from Plaintiff's Statement of Undisputed Material Facts in Opposition to Defendants' Cross-Motion for Summary Judgment(Dkt. No. 52), pp. 11-20, which quotes Plaintiff's response to Defendant's Statement of Undisputed Material Facts (Dkt. No. 37) and responds to each.

On January 6, 2011, in the evening, Los Angeles Police Department officers Lee and Batista responded to a radio call at Woodley Park in Los Angeles of "two men on Woodley bleeding from the face, jumping into traffic." The officers responded northbound Woodley from Burbank Blvd and came across a rescue ambulance (LAFD 090) treating an unknown person. Officers encountered Mr. Garber being treated in the rescue ambulance by LA Fire Department personnel. Witness Hal Dejong arrived and stated to the officers that he had been flagged down by passing motorists. Dejong reported to Officer Batista that Mr. Garber explained to Dejong that he heard a loud knock at his trailer, which was parked on Woodley Ave. Scared, Mr. Garber exited his trailer with a knife and encountered a male, later identified as David Sandlin, outside Plaintiff's trailer. An altercation ensued between the two men. Dejong reported to Officer Batista that Mr. Garber stated to Dejong that Mr. Garber observed a weapon in the other person's hand. At one point, Mr. Garber stated his shirt was pulled over his head, at which he began to swing his knife towards the other male in many directions. Dejong reported to Officer Batista that eventually the other male ran off. Dejong advised Officer Batista that Sandlin had serious stab wounds and injuries.[2] Mr. Garber was then detained in Officer Lee and Batista's patrol car.

LAPD Officers Robinson and Tomlin broadcasted that they interviewed Sandlin at a different location, and that Sandlin related to them that Mr. Garber came out of his motorhome

---

[2] Mr. Garber disputes that the wounds were in fact serious, based on Sandlin's departure from the hospital within one hour of arrival.

2

brandishing a large knife after Sandlin knocked on the motorhome as a practical joke.  Robinson and Tomlin advised Officer Batista that Sandlin reported Mr. Garber stabbed Sandlin with the knife and Sandlin defended himself with a switchblade.  Mr. Garber contests Sandlin's account, asserting that Mr. Garber did not brandish a knife when he came out of his motorhome (it was in his pocket) and that he was attacked by Sandlin, not Sandlin who was attacked by him.

Officers Lee and Batista transported Mr. Garber to West Valley Police Station, where he spoke with Lt. Jill Niles, a watch commander.  Officers spoke to Lt. Niles and the night watch detective regarding the incident and provided them with the evidence and facts of the event.  The night watch detective was Detective Larry Alvarez.

Lt. Niles signed a Booking Approval form for Mr. Garber to be booked for a violation of California Penal Code Section 245 (a)(1)(Assault with a Deadly Weapon).  Mr. Garber began to complain of chest pains.  A rescue ambulance transported him to Northridge Hospital for treatment of the chest pains.  Mr. Garber states that he waited over one hour for the ambulance, and Lt. Niles states that the ambulance was requested immediately.  (Plaintiff's Statement of Undisputed Material Facts in Opposition ¶ 25; Niles Decl. ¶ 9.)  After an EKG was completed on Garber, it was determined that he would have to stay in the hospital.  A crime report was completed.  Northridge Hospital later called LAPD to advise that Garber refused any further treatment and he was going to be released.  Other LAPD officers responded back to the hospital

and placed him under arrest again.  He was taken to the Van Nuys Jail.

On January 7, 2011, LAPD Det. Hickman reviewed the reports and booking recommendation for Mr. Garber.  Det. Hickman had no role in the previous arrest or booking of Mr. Garber.  Det. Hickman spoke to witness Dejong on the telephone on January 7, 2011.  Dejong, an off-duty police officer, reported to Hickman an account of the incident, according to which Sandlin told Dejong that Mr. Garber had stabbed Sandlin and Dejong observed that Sandlin was bleeding. Dejong told Hickman he observed Mr. Garber was armed with a knife. Dejong told Det. Hickman that Sandlin told Dejong that Garber "tried to kill" him.  Mr. Garber asserts that Sandlin's description of the incident is false, and that Sandlin attacked Mr. Garber.  He also asserts that Dejong did not see Mr. Garber's knife.

Mr. Garber remained in custody until Monday, January 10, 2011.

No criminal charges were filed against Mr. Garber, who was released.

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences from

the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the

evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

## III. Discussion

### A. False Arrest Under Color of Law

Probable cause exists for a warrantless arrest where "under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." U.S. v. Struckman, 603 F.3d 731, 739 (9th Cir. 2010) (internal quotation marks omitted).

Defendants present declarations indicating their basis for concluding that "there was a fair probability that the suspect had committed a crime." Id. "[C]ourts look to the totality of the circumstances known to the officers in determining whether there is probable cause for an arrest. . . . probable cause may be based on the collective knowledge of officers at the scene of an arrest." United States v. Sandoval-Venegas, 292 F.3d 1101, 1105 (9th Cir. 2002)(internal quotation marks and citations omitted). Relevant facts establishing probable cause from the officers' declarations include the following:

- a witness reported that Garber had a knife (Batista Decl. ¶ 2; Hickman Decl. ¶ 4.)
- officers reported to Officer Batista that Garber admitted he had a knife and used it during an altercation (Batista Decl. ¶ 4; Niles Decl. ¶ 6.)
- officers reported to Officer Batista and Lt. Niles that Sandlin reported to them that Garber stabbed Sandlin with

6

|     |     |
| --- | --- |
| 1 | the knife and he sustained injuries.  (Batista Decl. ¶ |
| 2 | 4; Niles Decl. ¶ 5.) |

Plaintiff argues that a number of facts weigh against the officers having had probable cause to arrest him. (Garber Mot. at 11.)  Most of the facts noted by Plaintiff pertain to Sandlin's greater degree of culpability, such as Sandlin's intoxication at the time of the incident (Exh. 11), Sandlin being on probation for another crime, Sandlin's age (21) relative to Plaintiff's (70), Sandlin's elopement from the hospital after being treated for his injury (Exh. 12), Sandlin's subsequent threatening gesture to Plaintiff, etc.  (See Garber Mot. at 6 ff.)

These facts do not address the question of whether Defendants had probable cause to arrest Mr. Garber.  Mr. Garber would have to present evidence that Defendants had knowledge of those facts at the time that Mr. Garber was arrested, but Plaintiff admitted at his deposition that he did not hear Sandlin's report of the crime to any police officer.  (Garber Depo. 29:10-13.) Furthermore, Mr. Garber would have to demonstrate that these facts about Sandlin negate the information Defendants had received concerning Plaintiff's role in the incident.  There is no reason why Defendants could not have had probable cause to arrest both Mr. Garber and Sandlin.

Plaintiff also points to what he argues are falsehoods in Defendants' declarations.  (Reply at 4-6.)  For instance, he claims that it is false that Sandlin had more serious injuries than Garber, and that therefore Lt. Niles' declaration contains a falsehood.  (Id. at 5.)  What Lt. Niles' declaration says in her declaration, however, is that she "was told that . . . Sandlin had

7

more serious injuries than Garber." (Niles Decl. ¶ 3.) Even assuming that Plaintiff's injuries were more severe than Sandlin's, this does not create an issue of fact as to Lt. Niles' declaration, since she is stating only what she heard, not the truth of what happened.[2] Likewise, Lt. Niles' statement that Dejong took the knife from Plaintiff is a report of the information she obtained from other officers, which contributed to her belief that there was probable cause to arrest Plaintiff.

"[T]he term 'probable cause means less than evidence which would justify condemnation, and . . . a finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial. There is a large difference between the two things to be proved (guilt and probable cause), as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them." United States v. Ventresca, 380 U.S. 102, 107-08 (1965). "It is irrelevant whether the police had admissible evidence proving [the suspected crime] beyond a reasonable doubt." Hart v. Parks, 450 F.3d 1059, 1067 (9th Cir. 2006).

The court finds that Defendants have presented evidence of the basis of their probable cause to arrest Plaintiff, and Plaintiff has not presented any evidence calling that basis into question. Plaintiff purports to have evidence that the basis for Defendants' probable cause was inaccurate or false, but that is not the issue in the probable cause inquiry. Here, the question is whether "under the totality of the facts and circumstances known to the

---

[2] This is also why the Officers' depositions are not hearsay, contrary to Mr. Garber's assertion.

8

arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." U.S. v. Struckman, 603 F.3d at 739. The court finds that the officers had probable cause to arrest Plaintiff and GRANTS summary judgment on this cause of action in favor of Defendants.

**B. Conspiracy to Violate Civil Rights**

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." Crowe v. Cnty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010)(internal citation and quotation marks omitted).

Plaintiff alleges that there was a conspiracy among the officers to arrest and jail him without probable cause. (Compl. ¶ 60.) In support of this claim, he asserts that Sandlin was never arrested or properly investigated, that Sandlin was 20 and Plaintiff was 70, and that Sandlin's identity card from San Francisco did not match his actual residence ("among the bushes along Burbank Blvd., Encino). (Id. ¶ 61.)

Defendants Boateng and Hickman state in their declarations that there was no conspiracy to violate Mr. Garber's rights. (Boateng Decl. ¶ 6, Hickman Decl. ¶ 12.)

Plaintiff's evidence does not establish that there was a meeting of the minds to violate his constitutional rights. It may establish that Defendants also had probable cause to arrest Sandlin, but that does not suffice to establish that there was an agreement between Defendants to violate Plaintiff's rights.

Defendants' evidence that there was no conspiracy, in the form of their declarations, is uncontroverted. The court finds that

9

there is no issue of material fact as to this cause of action and GRANTS summary judgment in favor of Defendants.

**C. Unreasonable seizure under color of law**

Under this cause of action, Mr. Garber alleges that he was arrested without probable cause, there was probable cause to arrest Sandlin, and witnesses were not interviewed. (Compl. ¶¶ 63-65.) All of these claims go to the issue of whether Defendants had probable cause to arrest Mr. Garber. As discussed above, Defendants have presented evidence of probable cause to arrest Mr. Garber, and Mr. Garber has not presented evidence that raises an issue of material fact with respect to his own arrest, the court finds that there is no disputed issue of fact as to probable cause.

Mr. Garber also may be alleging that he was detained without being charged for an unreasonable period of time. He points out that Defendants claim that he was booked at on Friday, January 7, 2011, "due to his medical complaints" (Decl. Hickman ¶ 5), but that another booking sheet indicates that he was arrested on Thursday, January 6, 2011, at 6:40 p.m. (Exh. 13.) Whether Mr. Garber was arrested on Thursday at 6:40 p.m. or on Friday is immaterial to the deadline for either charging or releasing him; either way Defendants had, as Det. Hickman states, the full day of Monday, January 10, 2011, to arrest or release him. See Cal. Penal Code § 825 ("[T]he defendant shall in all cases be taken before the magistrate without unnecessary delay, and, in any event, within 48 hours after his or her arrest, excluding Sundays and holidays. . . . When the 48 hours . . . expire at a time when the court in which the magistrate is sitting is not in session, that time shall be

10

extended to include the duration of the next court session on the judicial day immediately following.")

The court therefore GRANTS summary judgment to Defendants on this issue.

**D. Harassment/Retaliation Under Color of Law**

In this cause of action, Mr. Garber asserts a violation of his substantive due process rights. (Compl. ¶ 68.) To the extent that he is purporting to state a claim under the Fourteenth Amendment based on his allegations that Defendants falsely arrested him, Mr. Garber has no substantive right under the Due Process Clause to be free from criminal arrest or prosecution without probable cause. Albright v. Oliver, 510 U.S. 266, 268 (1994). Such claims must be brought under the Fourth Amendment, which "requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest." Id. at 274 (internal citation omitted). The court has already determined that there was probable cause to arrest Mr. Garber.

**E. Discrimination under color of law**

"[Section] 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998). Mr. Garber has failed to set forth any facts to raise any inference that any Defendant intentionally discriminated against him based on his membership in a protected class. Mr. Garber alleges that he was discriminated against as an Israeli

11

citizen, a Jewish person,[3] and a homeless person. (Compl. ¶¶ 75-78.) Defendants assert that they had no prior knowledge of Mr. Garber in any capacity. (Niles Decl. ¶ 12; Hickman Decl. ¶ 12; Boateng Decl. ¶ 5.)

Mr. Garber claims prior acquaintance with Det. Hickman and Officer Lee. (Plaintiff's Statement of Undisputed Facts in Opposition to Defendant's Cross-Motion for Summary Judgment ¶ 39.) However, although Mr. Garber presents testimony indicating his prior acquaintance with Det. Hickman in his Deposition[3] (Garber Depo. 15:2-24:10.), he also stated that he did not recall if he informed Det. Hickman of his nationality or religion (21:2-9). He did assert that "[t]hey – every police officer at the – at the West Valley Police Station know that I'm an Israel citizen. . . . Because my lawsuits and my statements to LAPD officers every time that they detain me or arrest me." (20:19-21:1.) However, these assertions of general knowledge of Mr. Garber's religion and nationality do not suffice to raise the inference of intentional discrimination against him on those bases. Nor does he present any facts from which to draw the inference that he was intentionally discriminated against because he is homeless; the court has already found that Defendants had probable cause to arrest him.

The court finds that there is no issue of fact as to this cause of action and GRANTS summary judgment to Defendants.

**F. Malicious Prosecution**

---

[3] The court infers this from his Complaint, which states that Mr. Garber is "an alien with an israeli citizenship which makes for an additional protection based on religion." (Compl. ¶ 75.)

[3] The deposition does not appear to mention prior acquaintance with Officer Lee.

12

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004)(internal quotation marks and citation omitted). Mr. Garber concedes that no charges were filed against him, but asserts that Defendants Hickman, Niles, and Alvarez attempted to trick the District Attorney into filing charges. (Opp. at 9.)

The parties agree that no charges were brought against Mr. Garber. Additionally, the court has found that Defendants had probable cause to arrest Mr. Garber. There is therefore no issue of fact as to this cause of action. The court GRANTS summary judgment in favor of defendants.

**G. Personal Injury Under Color of Law**

In this cause of action, Mr. Garber alleges that as a result of his arrest and detention, and the concomitant impounding of his dog, trailer, and van, he suffered severe mental trauma which resulted in depression. (Compl. ¶ 86.) He also alleges that the "constant surveillance and abuse" police officers have resulted in "constant pressure and anxiety." (Id. ¶ 90.) This appears to be an assertion of damages resulting from violations of his constitutional rights. However, as discussed above, Mr. Garber has failed to provide facts supporting an underlying constitutional violation. Without establishing such violation, Mr. Garber cannot recover for any alleged injuries.

13

The court finds that there is no issue of fact as to this cause of action and GRANTS summary judgment in favor of Defendants.

**IV. Conclusion**

For the reasons stated above, the court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment.

In addition, the SCHEDULING CONFERENCE set for May 13, 2013 is VACATED.

IT IS SO ORDERED.

Dated: May 8, 2013

DEAN D. PREGERSON
United States District Judge