1

2

3                                                                    O

4                                                   NO JS-6

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  ROBERT GARBER,                )  Case No. CV 11-09745 DDP (RNBx)
                                   )
12              Plaintiff,         )  **ORDER GRANTING DEFENDANTS' MOTION**
                                   )  **FOR SUMMARY JUDGMENT AND DENYING**
13        v.                       )  **PLAINTIFF'S MOTION FOR SUMMARY**
                                   )  **JUDGMENT**
14  HICKMAN #30355, in her         )
    official capacity as a         )  [Dkt. Nos. 33 & 37 ]
15  detective for the Los          )
    Angeles Police Department,     )
16                                 )
                Defendant.         )
17                                 )
    _____    )
18

19        Presently before the court are Plaintiff Robert Garber's

20  Motion for Summary Judgment and Defendants City of Los Angeles, Los

21  Angeles Police Department, Jennifer Hickman, Jill Niles, and

22  Frances Boateng's Motion for Summary Judgment.  Having considered

23  the parties' submissions, the court adopts the following order.

24  **I. Background**

25        The following facts are not disputed.[1]

26  _____

27        [1] These facts are drawn from Plaintiff's Statement of
    Undisputed Material Facts in Opposition to Defendants' Cross-Motion
28  for Summary Judgment(Dkt. No. 52), pp. 11-20, which quotes
    Plaintiff's response to Defendant's Statement of Undisputed
    Material Facts (Dkt. No. 37) and responds to each.

1    On January 6, 2011, in the evening, Los Angeles Police
2    Department officers Lee and Batista responded to a radio call at
3    Woodley Park in Los Angeles of "two men on Woodley bleeding from
4    the face, jumping into traffic."  The officers responded northbound
5    Woodley from Burbank Blvd and came across a rescue ambulance (LAFD
6    090) treating an unknown person.  Officers encountered Mr. Garber
7    being treated in the rescue ambulance by LA Fire Department
8    personnel.  Witness Hal Dejong arrived and stated to the officers
9    that he had been flagged down by passing motorists.  Dejong
10   reported to Officer Batista that Mr. Garber explained to Dejong
11   that he heard a loud knock at his trailer, which was parked on
12   Woodley Ave.  Scared, Mr. Garber exited his trailer with a knife
13   and encountered a male, later identified as David Sandlin, outside
14   Plaintiff's trailer. An altercation ensued between the two men.
15   Dejong reported to Officer Batista that Mr. Garber stated to Dejong
16   that Mr. Garber observed a weapon in the other person's hand.  At
17   one point, Mr. Garber stated his shirt was pulled over his head, at
18   which he began to swing his knife towards the other male in many
19   directions.  Dejong reported to Officer Batista that eventually the
20   other male ran off.  Dejong advised Officer Batista that Sandlin
21   had serious stab wounds and injuries.[2]  Mr. Garber was then
22   detained in Officer Lee and Batista's patrol car.
23       LAPD Officers Robinson and Tomlin broadcasted that they
24   interviewed Sandlin at a different location, and that Sandlin
25   related to them that Mr. Garber came out of his motorhome
26
27       [2] Mr. Garber disputes that the wounds were in fact serious,
28   based on Sandlin's departure from the hospital within one hour of
     arrival.

1  brandishing a large knife after Sandlin knocked on the motorhome as
2  a practical joke.  Robinson and Tomlin advised Officer Batista that
3  Sandlin reported Mr. Garber stabbed Sandlin with the knife and
4  Sandlin defended himself with a switchblade.  Mr. Garber contests
5  Sandlin's account, asserting that Mr. Garber did not brandish a
6  knife when he came out of his motorhome (it was in his pocket) and
7  that he was attacked by Sandlin, not Sandlin who was attacked by
8  him.
9      Officers Lee and Batista transported Mr. Garber to West Valley
10 Police Station, where he spoke with Lt. Jill Niles, a watch
11 commander.  Officers spoke to Lt. Niles and the night watch
12 detective regarding the incident and provided them with the
13 evidence and facts of the event.  The night watch detective was
14 Detective Larry Alvarez.
15     Lt. Niles signed a Booking Approval form for Mr. Garber to be
16 booked for a violation of California Penal Code Section 245
17 (a)(1)(Assault with a Deadly Weapon).  Mr. Garber began to complain
18 of chest pains.  A rescue ambulance transported him to Northridge
19 Hospital for treatment of the chest pains.  Mr. Garber states that
20 he waited over one hour for the ambulance, and Lt. Niles states
21 that the ambulance was requested immediately.  (Plaintiff's
22 Statement of Undisputed Material Facts in Opposition ¶ 25; Niles
23 Decl. ¶ 9.)  After an EKG was completed on Garber, it was
24 determined that he would have to stay in the hospital.  A crime
25 report was completed.  Northridge Hospital later called LAPD to
26 advise that Garber refused any further treatment and he was going
27 to be released.  Other LAPD officers responded back to the hospital
28

3

1  and placed him under arrest again.  He was taken to the Van Nuys

2  Jail.

3       On January 7, 2011, LAPD Det. Hickman reviewed the reports and

4  booking recommendation for Mr. Garber.  Det. Hickman had no role in

5  the previous arrest or booking of Mr. Garber.  Det. Hickman spoke

6  to witness Dejong on the telephone on January 7, 2011.  Dejong, an

7  off-duty police officer, reported to Hickman an account of the

8  incident, according to which Sandlin told Dejong that Mr. Garber

9  had stabbed Sandlin and Dejong observed that Sandlin was bleeding.

10 Dejong told Hickman he observed Mr. Garber was armed with a knife.

11 Dejong told Det. Hickman that Sandlin told Dejong that Garber

12 "tried to kill" him.  Mr. Garber asserts that Sandlin's description

13 of the incident is false, and that Sandlin attacked Mr. Garber.  He

14 also asserts that Dejong did not see Mr. Garber's knife.

15      Mr. Garber remained in custody until Monday, January 10, 2011.

16      No criminal charges were filed against Mr. Garber, who was

17 released.

18 **II. Legal Standard**

19      Summary judgment is appropriate where the pleadings,

20 depositions, answers to interrogatories, and admissions on file,

21 together with the affidavits, if any, show "that there is no

22 genuine dispute as to any material fact and the movant is entitled

23 to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party

24 seeking summary judgment bears the initial burden of informing the

25 court of the basis for its motion and of identifying those portions

26 of the pleadings and discovery responses that demonstrate the

27 absence of a genuine dispute of material fact.  Celotex Corp. v.

28 Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences from

1   the evidence must be drawn in favor of the nonmoving party.   See

2   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986).

3   If the moving party does not bear the burden of proof at trial, it

4   is entitled to summary judgment if it can demonstrate that "there

5   is an absence of evidence to support the nonmoving party's case."

6   Celotex, 477 U.S. at 323.

7       Once the moving party meets its burden, the burden shifts to

8   the nonmoving party opposing the motion, who must "set forth

9   specific facts showing that there is a genuine issue for trial."

10  Anderson, 477 U.S. at 256.  Summary judgment is warranted if a

11  party "fails to make a showing sufficient to establish the

12  existence of an element essential to that party's case, and on

13  which that party will bear the burden of proof at trial." Celotex,

14  477 U.S. at 322.  A genuine issue exists if "the evidence is such

15  that a reasonable jury could return a verdict for the nonmoving

16  party," and material facts are those "that might affect the outcome

17  of the suit under the governing law."  Anderson, 477 U.S. at 248.

18  There is no genuine issue of fact "[w]here the record taken as a

19  whole could not lead a rational trier of fact to find for the non-

20  moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

21  475 U.S. 574, 587 (1986).

22      It is not the court's task "to scour the record in search of a

23  genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275,

24  1278 (9th Cir. 1996). Counsel has an obligation to lay out their

25  support clearly.  Carmen v. San Francisco Sch. Dist., 237 F.3d

26  1026, 1031 (9th Cir. 2001).  The court "need not examine the entire

27  file for evidence establishing a genuine issue of fact, where the

28

1  evidence is not set forth in the opposition papers with adequate
2  references so that it could conveniently be found." Id.
3  **III. Discussion**
4      **A. False Arrest Under Color of Law**
5      Probable cause exists for a warrantless arrest where "under
6  the totality of the facts and circumstances known to the arresting
7  officer, a prudent person would have concluded that there was a
8  fair probability that the suspect had committed a crime." U.S. v.
9  Struckman, 603 F.3d 731, 739 (9th Cir. 2010) (internal quotation
10 marks omitted).

11     Defendants present declarations indicating their basis for
12 concluding that "there was a fair probability that the suspect had
13 committed a crime." Id. "[C]ourts look to the totality of the
14 circumstances known to the officers in determining whether there is
15 probable cause for an arrest. . . . probable cause may be based on
16 the collective knowledge of officers at the scene of an arrest."
17 United States v. Sandoval-Venegas, 292 F.3d 1101, 1105 (9th Cir.
18 2002)(internal quotation marks and citations omitted). Relevant
19 facts establishing probable cause from the officers' declarations
20 include the following:

21     •   a witness reported that Garber had a knife (Batista Decl.
22         ¶ 2; Hickman Decl. ¶ 4.)
23     •   officers reported to Officer Batista that Garber admitted
24         he had a knife and used it during an altercation (Batista
25         Decl. ¶ 4; Niles Decl. ¶ 6.)
26     •   officers reported to Officer Batista and Lt. Niles that
27         Sandlin reported to them that Garber stabbed Sandlin with
28

1      the knife and he sustained injuries.   (Batista Decl. ¶

2         4; Niles Decl. ¶ 5.)

3      Plaintiff argues that a number of facts weigh against the

4 officers having had probable cause to arrest him. (Garber Mot. at

5 11.)  Most of the facts noted by Plaintiff pertain to Sandlin's

6 greater degree of culpability, such as Sandlin's intoxication at

7 the time of the incident (Exh. 11), Sandlin being on probation for

8 another crime, Sandlin's age (21) relative to Plaintiff's (70),

9 Sandlin's elopement from the hospital after being treated for his

10 injury (Exh. 12), Sandlin's subsequent threatening gesture to

11 Plaintiff, etc.  (See Garber Mot. at 6 ff.)

12     These facts do not address the question of whether Defendants

13 had probable cause to arrest Mr. Garber.  Mr. Garber would have to

14 present evidence that Defendants had knowledge of those facts at

15 the time that Mr. Garber was arrested, but Plaintiff admitted at

16 his deposition that he did not hear Sandlin's report of the crime

17 to any police officer.  (Garber Depo. 29:10-13.) Furthermore, Mr.

18 Garber would have to demonstrate that these facts about Sandlin

19 negate the information Defendants had received concerning

20 Plaintiff's role in the incident.  There is no reason why

21 Defendants could not have had probable cause to arrest both Mr.

22 Garber and Sandlin.

23     Plaintiff also points to what he argues are falsehoods in

24 Defendants' declarations.  (Reply at 4-6.)  For instance, he claims

25 that it is false that Sandlin had more serious injuries than

26 Garber, and that therefore Lt. Niles' declaration contains a

27 falsehood.  (Id. at 5.)  What Lt. Niles' declaration says in her

28 declaration, however, is that she "was told that . . . Sandlin had

1   more serious injuries than Garber." (Niles Decl. ¶ 3.)   Even

2   assuming that Plaintiff's injuries were more severe than Sandlin's,

3   this does not create an issue of fact as to Lt. Niles' declaration,

4   since she is stating only what she heard, not the truth of what

5   happened.[2]   Likewise, Lt. Niles' statement that Dejong took the

6   knife from Plaintiff is a report of the information she obtained

7   from other officers, which contributed to her belief that there was

8   probable cause to arrest Plaintiff.

9        "[T]he term 'probable cause means less than evidence which

10   would justify condemnation, and . . . a finding of 'probable cause'

11   may rest upon evidence which is not legally competent in a criminal

12   trial. There is a large difference between the two things to be

13   proved (guilt and probable cause), as well as between the tribunals

14   which determine them, and therefore a like difference in the quanta

15   and modes of proof required to establish them." United States v.

16   Ventresca, 380 U.S. 102, 107-08 (1965).   "It is irrelevant whether

17   the police had admissible evidence proving [the suspected crime]

18   beyond a reasonable doubt." Hart v. Parks, 450 F.3d 1059, 1067

19   (9th Cir. 2006).

20        The court finds that Defendants have presented evidence of the

21   basis of their probable cause to arrest Plaintiff, and Plaintiff

22   has not presented any evidence calling that basis into question.

23   Plaintiff purports to have evidence that the basis for Defendants'

24   probable cause was inaccurate or false, but that is not the issue

25   in the probable cause inquiry.   Here, the question is whether

26   "under the totality of the facts and circumstances known to the

27

28        [2] This is also why the Officers' depositions are not hearsay,
     contrary to Mr. Garber's assertion.

arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." U.S. v. Struckman, 603 F.3d at 739.  The court finds that the officers had probable cause to arrest Plaintiff and GRANTS summary judgment on this cause of action in favor of Defendants.

**B. Conspiracy to Violate Civil Rights**

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." Crowe v. Cnty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010)(internal citation and quotation marks omitted).

Plaintiff alleges that there was a conspiracy among the officers to arrest and jail him without probable cause.  (Compl. ¶ 60.)  In support of this claim, he asserts that Sandlin was never arrested or properly investigated, that Sandlin was 20 and Plaintiff was 70, and that Sandlin's identity card from San Francisco did not match his actual residence ("among the bushes along Burbank Blvd., Encino).  (Id. ¶ 61.)

Defendants Boateng and Hickman state in their declarations that there was no conspiracy to violate Mr. Garber's rights. (Boateng Decl. ¶ 6, Hickman Decl. ¶ 12.)

Plaintiff's evidence does not establish that there was a meeting of the minds to violate his constitutional rights.  It may establish that Defendants also had probable cause to arrest Sandlin, but that does not suffice to establish that there was an agreement between Defendants to violate Plaintiff's rights.

Defendants' evidence that there was no conspiracy, in the form of their declarations, is uncontroverted.  The court finds that

9

1   there is no issue of material fact as to this cause of action and

2   GRANTS summary judgment in favor of Defendants.

3        **C. Unreasonable seizure under color of law**

4        Under this cause of action, Mr. Garber alleges that he was

5   arrested without probable cause, there was probable cause to arrest

6   Sandlin, and witnesses were not interviewed.  (Compl. ¶¶ 63-65.)

7   All of these claims go to the issue of whether Defendants had

8   probable cause to arrest Mr. Garber.  As discussed above,

9   Defendants have presented evidence of probable cause to arrest Mr.

10  Garber, and Mr. Garber has not presented evidence that raises an

11  issue of material fact with respect to his own arrest, the court

12  finds that there is no disputed issue of fact as to probable cause.

13       Mr. Garber also may be alleging that he was detained without

14  being charged for an unreasonable period of time.  He points out

15  that Defendants claim that he was booked at on Friday, January 7,

16  2011, "due to his medical complaints" (Decl. Hickman ¶ 5), but that

17  another booking sheet indicates that he was arrested on Thursday,

18  January 6, 2011, at 6:40 p.m. (Exh. 13.)  Whether Mr. Garber was

19  arrested on Thursday at 6:40 p.m. or on Friday is immaterial to the

20  deadline for either charging or releasing him; either way

21  Defendants had, as Det. Hickman states, the full day of Monday,

22  January 10, 2011, to arrest or release him.  See Cal. Penal Code §

23  825 ("[T]he defendant shall in all cases be taken before the

24  magistrate without unnecessary delay, and, in any event, within 48

25  hours after his or her arrest, excluding Sundays and holidays. . .

26  . When the 48 hours . . . expire at a time when the court in which

27  the magistrate is sitting is not in session, that time shall be

28

1   extended to include the duration of the next court session on the

2   judicial day immediately following.")

3       The court therefore GRANTS summary judgment to Defendants on

4   this issue.

5       **D. Harassment/Retaliation Under Color of Law**

6       In this cause of action, Mr. Garber asserts a violation of his

7   substantive due process rights.  (Compl. ¶ 68.)  To the extent that

8   he is purporting to state a claim under the Fourteenth Amendment

9   based on his allegations that Defendants falsely arrested him, Mr.

10  Garber has no substantive right under the Due Process Clause to be

11  free from criminal arrest or prosecution without probable cause.

12  Albright v. Oliver, 510 U.S. 266, 268 (1994).  Such claims must be

13  brought under the Fourth Amendment, which "requires a judicial

14  determination of probable cause as a prerequisite to any extended

15  restraint on liberty following an arrest."  Id. at 274 (internal

16  citation omitted).  The court has already determined that there was

17  probable cause to arrest Mr. Garber.

18      **E. Discrimination under color of law**

19      "[Section] 1983 claims based on Equal Protection violations

20  must plead intentional unlawful discrimination or allege facts that

21  are at least susceptible of an inference of discriminatory intent."

22  Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th

23  Cir. 1998).  Mr. Garber has failed to set forth any facts to raise

24  any inference that any Defendant intentionally discriminated

25  against him based on his membership in a protected class.  Mr.

26  Garber alleges that he was discriminated against as an Israeli

27

28

1   citizen, a Jewish person,[3] and a homeless person.  (Compl. ¶¶ 75-

2   78.)  Defendants assert that they had no prior knowledge of Mr.

3   Garber in any capacity.  (Niles Decl. ¶ 12; Hickman Decl. ¶ 12;

4   Boateng Decl. ¶ 5.)

5       Mr. Garber claims prior acquaintance with Det. Hickman and

6   Officer Lee.  (Plaintiff's Statement of Undisputed Facts in

7   Opposition to Defendant's Cross-Motion for Summary Judgment ¶ 39.)

8   However, although Mr. Garber presents testimony indicating his

9   prior acquaintance with Det. Hickman in his Deposition[3] (Garber

10  Depo. 15:2-24:10.), he also stated that he did not recall if he

11  informed Det. Hickman of his nationality or religion (21:2-9).  He

12  did assert that "[t]hey – every police officer at the – at the West

13  Valley Police Station know that I'm an Israel citizen. . . .

14  Because my lawsuits and my statements to LAPD officers every time

15  that they detain me or arrest me." (20:19-21:1.)  However, these

16  assertions of general knowledge of Mr. Garber's religion and

17  nationality do not suffice to raise the inference of intentional

18  discrimination against him on those bases.  Nor does he present any

19  facts from which to draw the inference that he was intentionally

20  discriminated against because he is homeless; the court has already

21  found that Defendants had probable cause to arrest him.

22      The court finds that there is no issue of fact as to this

23  cause of action and GRANTS summary judgment to Defendants.

24      **F. Malicious Prosecution**

25  _____

26      [3] The court infers this from his Complaint, which states that
    Mr. Garber is "an alien with an israeli citizenship which makes for
27  an additional protection based on religion." (Compl. ¶ 75.)

28      [3] The deposition does not appear to mention prior acquaintance
    with Officer Lee.

1    "In order to prevail on a § 1983 claim of malicious
2  prosecution, a plaintiff must show that the defendants prosecuted
3  [him] with malice and without probable cause, and that they did so
4  for the purpose of denying [him] equal protection or another
5  specific constitutional right." <u>Awabdy v. City of Adelanto</u>, 368
6  F.3d 1062, 1066 (9th Cir. 2004)(internal quotation marks and
7  citation omitted).  Mr. Garber concedes that no charges were filed
8  against him, but asserts that Defendants Hickman, Niles, and
9  Alvarez attempted to trick the District Attorney into filing
10  charges.  (Opp. at 9.)
11    The parties agree that no charges were brought against Mr.
12  Garber.  Additionally, the court has found that Defendants had
13  probable cause to arrest Mr. Garber.  There is therefore no issue
14  of fact as to this cause of action.  The court GRANTS summary
15  judgment in favor of defendants.
16  **G. Personal Injury Under Color of Law**
17    In this cause of action, Mr. Garber alleges that as a result
18  of his arrest and detention, and the concomitant impounding of his
19  dog, trailer, and van, he suffered severe mental trauma which
20  resulted in depression.  (Compl. ¶ 86.) He also alleges that the
21  "constant surveillance and abuse" police officers have resulted in
22  "constant pressure and anxiety." (<u>Id.</u> ¶ 90.)  This appears to be
23  an assertion of damages resulting from violations of his
24  constitutional rights.  However, as discussed above, Mr. Garber has
25  failed to provide facts supporting an underlying constitutional
26  violation.  Without establishing such violation, Mr. Garber cannot
27  recover for any alleged injuries.
28

13

1        The court finds that there is no issue of fact as to this

2   cause of action and GRANTS summary judgment in favor of Defendants.

3   **IV. Conclusion**

4        For the reasons stated above, the court DENIES Plaintiff's

5   Motion for Summary Judgment and GRANTS Defendants' Motion for

6   Summary Judgment.

7        In addition, the SCHEDULING CONFERENCE set for May 13, 2013 is

8   VACATED.

9   IT IS SO ORDERED.

10

11

12  Dated: May 8, 2013

                                    DEAN D.  PREGERSON
13                                  United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28